IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| REGINALD GRANT, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:22-CV-0439-S-BH |
| | § | |
| AMAZON.COM SERVICES LLC, | § | |
| Defendant. | § | Referred to U.S. Magistrate Judge[1] |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Based on the relevant filings, evidence, and applicable law, *Defendant's Motion for Summary Judgment*, filed October 14, 2022 (doc. 32), should be **GRANTED**, *Defendant's Objections to and Motion to Strike Plaintiff's Summary Judgment Evidence*, filed March 6, 2023 (doc. 44), is **DENIED as moot**, the plaintiff's response to the motion for summary judgment is liberally construed as a motion for leave to amend his petition to add new claims and **GRANTED**, and summary judgment should be *sua sponte* **GRANTED** in favor of the defendant on the remaining claims against it.

### I.    BACKGROUND

Reginald L. Grant (Plaintiff) sues his former employer, Amazon.com Services LLC (Defendant), for age discrimination in violation of the Age Discrimination in Employment Act of 1967 (ADEA). (doc. 1-3 at 3.)[2]

Plaintiff began his employment with Defendant as a part-time Fulfillment Center Associate I at its Texas "sort facility warehouse" on October 5, 2018. (doc. 34 at 10, 143.) In that

---

[1] By *Special Order 3-251*, this *pro se* case has been referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

role, he sometimes worked as a "line lead", which is a temporary designation for a person who informs managers about a team's status via walkie-talkie. (*Id.* at 144.)

On January 31, 2019, Plaintiff applied for a job as a Process Assistant, a position tasked with assisting managers in running specific areas of the warehouse. (*Id.* at 143.) On February 7, 2019, he was informed that he was not selected for the job. (*Id.* at 92, 119-20, 143-44.) The requisition was closed without anyone being hired for the position. (*Id.*)

On April 4, 2019, Plaintiff applied for a job as a Seasonal Transportation Associate, a position tasked with "guard shack" duties, moving trailers with hostlers, and auditing trailers. (*Id.* at 27, 151.) He was scheduled for a phone interview on April 19, 2019, but it did not occur because he called the wrong number. (*Id.* at 147-48.) Because there were other Seasonal Transportation Associate positions available, Plaintiff was scheduled for another interview on April 26, 2019. (*Id.*) He was selected for the position, which he started on July 10, 2019. (*Id.* at 27, 148, 150.) On September 11, 2019, Plaintiff was selected to be a Hostler Trainer to provide associates training on driving hostlers. (*Id.* at 27-28, 151.)

Plaintiff applied for and was selected to become a Transportation Associate on September 18, 2019, a non-seasonal position that he held for the remainder of his employment. (*Id.* at 144, 151.) In addition to the standard job duties of Seasonal Transportation Associates, Transportation Associates also drive vehicles "over the road" between facilities to perform "TOMY runs." (*Id.* at 151.) To perform TOMY runs, a Transportation Associate must have a commercial driver's license (CDL) and undergo additional internal TOMY training; no additional compensation is provided for performing TOMY runs. (*Id.*) Defendant "expect[s]" all Transportation Associates, including Plaintiff, to receive the 4-week CDL training, based on "tenure", "business need", and the training schedule, but it does not need all Transportation Associates to have a CDL at any

given point in time. (*Id.*) As a general goal, Defendant seeks to have its Transportation Associates CDL-trained within two years of starting work in the Transportation Department. (*Id.* at 151-52, 156-57.)

In April 2020, Transportation Associates, including Plaintiff, were invited for a limited time to work "voluntary extra time", or overtime, in the Operations Department. (*Id.* at 152-54.) Before receiving overtime work, a Transportation Associate had to have completed "day1" training, which was offered twice a day, Monday through Friday. (*Id.*) In early April 2020, Plaintiff's hiring manager (Hiring Manager) sent three emails to the Transportation Associates about overtime opportunities and the required day1 training, explaining that a "randomizer" would be used to select eligible associates if not enough overtime opportunities were available. (*Id.* at 100, 103, 105.) On April 4, 2020, Hiring Manager forwarded those emails to Plaintiff in response to his email that he did not receive any information on overtime work. (*Id.* at 99, 153.) Plaintiff does not recall taking the day1 training or signing up for the training, but he requested overtime two or three times. (*Id.* at 25, 30-31.) After Plaintiff complained about not being selected for overtime, Hiring Manager approved him to work 4 or 5 hours of overtime. (*Id.*)

On June 4, 2021, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging age discrimination from February 5, 2019 to March 5, 2019. (*Id.* at 116-17.) His EEOC charge alleged that: (1) he did not receive an interview and was denied a promotion on March 5, 2019; (2) he was subjected to verbal abuse by his manager who called him "an old man" and "another Viet Nam Vet"; (3) he was treated "differently when [it] came to work assignments"; (4) his manager only called out his work performance over the radio and then assigned him a more physically challenging position when he tried to speak up about it; and (5) he was denied overtime opportunities and received overtime only after emailing

Hiring Manager that "he was bias[ed] in awarding overtime." (*Id.*) Plaintiff did not check the box indicating that the alleged discrimination was a "continuing action." (*Id.*) The EEOC sent Plaintiff a 90-day right to sue letter on August 17, 2021. (doc. 42 at 2.)

Plaintiff was scheduled to begin CDL training on August 29, 2021, but it was rescheduled to September 19, 2021, to accommodate his personal leave request. (doc. 34 at 31, 107, 157.) He received his CDL on October 13, 2021. (*Id.* at 31.) On August 13, 2022, Plaintiff resigned from his job. (*Id.* at 111.)

On November 2, 2021, Plaintiff filed this lawsuit in state court. (*See* doc. 1-3.) After removing the state action to federal court, Defendant moved for summary judgment on all of Plaintiff's ADEA claims. (docs. 32-34.) Defendant also moved to strike Plaintiff's summary judgment evidence, included with his sworn response. (docs. 42, 44, 46.)

## II.     EVIDENTIARY OBJECTIONS

Defendant objects and moves to strike Plaintiff's exhibits on the grounds that they are inadmissible hearsay, not properly authenticated, and irrelevant. (doc. 44 at 2-3.) It also moves to strike Plaintiff's sworn assertions to the extent that they contradict his deposition testimony, or are unsupported, conclusory, and not based on personal knowledge. (*Id.* at 3-7.) Because the objected exhibits and assertions, even if considered, do not affect the disposition of the pending motion for summary judgment, Defendant's objections are **OVERRULED** and its motion to strike is **DENIED as moot.** *See Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-CV-1866-D, 2006 WL 984690, at *1 n.6 (N.D. Tex. Apr. 14, 2006) (overruling as moot objections to evidence not considered by the court in deciding the summary judgment motion).

## III.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no

genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record that reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant bears the burden of proof on an issue, it must "establish beyond peradventure *all* of the essential elements of the claim or defense." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)) (emphasis original). The moving party can also meet its summary judgment burden by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325 (quotations omitted). There is "no genuine issue as to any material fact [where] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Id.* at 324. It must go beyond its pleadings and designate specific facts to show there is a genuine issue for trial. *Id.*; *Anderson*, 477 U.S. at 249.[3] Although the pleadings of a *pro se* litigant are to be provided "a liberal construction," *Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir.

---

[3] "The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ... admissions, interrogatory answers, or other materials.'" *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011) (citing Fed. R. Civ. P. 56(c)(1)).

2012), Rule 56 imposes no obligation for a court "to sift through the record in search of evidence to support a party's opposition to summary judgment," *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Parties must "identify specific evidence in the record" supporting challenged claims and "articulate the precise manner in which that evidence supports [those] claim[s]." *Ragas*, 136 F.3d at 458 (citing *Forsyth*, 19 F.3d at 1537).

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

## IV. ADEA

Defendant moves for summary judgment on Plaintiff's ADEA claims, arguing that they are barred for failure to exhaust administrative remedies. (doc. 33 at 12-24.)

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Before an individual can pursue an ADEA claim in federal court, he must exhaust his available administrative remedies by filing a charge with the EEOC. *See id.* § 626(d); *D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 455 (5th Cir. 2010).

To be timely, a plaintiff must file a charge with the EEOC within 180 days after the alleged unlawful action occurred. 29 U.S.C. § 626(d)(1)(A); *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 455 (5th Cir. 2011). In a "deferral state" like Texas, the charge must be filed within 300 days of the alleged unlawful act. 29 U.S.C. § 626(d)(1)(B); *Conaway v. Control Data Corp.*, 955 F.2d 358, 362 (5th Cir. 1992). Consequently, "a Texas employee's ADEA claims are normally time-barred if the employee fails to file an age discrimination charge with the EEOC within 300 days from the date of the unlawful employment practice." *Tyler v. Union Oil Co.*, 304 F.3d 379, 384 (5th Cir. 2002).

The 300-day window for filing a charge of discrimination with the EEOC is not a jurisdictional prerequisite, "but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). The limitations period begins to run when the plaintiff receives notice of the allegedly discriminatory action. *Conaway*, 955 F.2d at 362 (citing *Amburgey v. Corhart Refractories Corp., Inc.*, 936 F.2d 805, 810 (5th Cir. 1991)). A plaintiff who does not file a charge within 300 days bears the burden of showing a factual basis for tolling the limitations period. *Blumberg v. HCA Mgmt. Co.*, 848 F.2d 642, 644 (5th Cir. 1988), *cert. denied*, 488 U.S. 1007 (1989). "The doctrine of equitable estoppel 'may properly be invoked when the employee's untimeliness in filing his charge results from either the employer's deliberate design to delay the filing or actions that the employer should unmistakably have understood would result in the employee's delay.' " *Tyler*, 304 F.3d at 391 (quoting *Clark v. Resistoflex Co.*, 854 F.2d 762, 769 (5th Cir. 1988)). Equitable tolling applies only in "rare and exceptional circumstances," however. *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002) (citation omitted).

Defendant argues that Plaintiff failed to file his charge of discrimination within 300 days

of the allegedly adverse actions asserted in his petition. (doc. 33 at 12.) To meet its summary judgment burden, Defendant points to evidence that Plaintiff filed his EEOC charge on June 4, 2021. (doc. 34 at 116-17.) Plaintiff's charge complains of discriminatory actions from February 5, 2019 to March 5, 2019; it does not indicate that the alleged discrimination was a "continuing action". (*Id.*) Defendant also provides the April 2020 emails between Plaintiff and Hiring Manager about available overtime opportunities. (*Id.* at 99-100, 103, 105.) Any alleged incidents of discrimination that occurred more than 300 days before the filing of his EEOC charge, or before August 8, 2020, are time barred and cannot provide a basis for recovery in a civil suit. *See Tyler*, 304 F.3d at 384. Because the most recent incident of discrimination mentioned in his charge occurred in April 2020, more than 300 days prior to the filing of the charge, Defendant has met its initial summary judgment burden to show that Plaintiff has failed to timely exhaust his ADEA claims.

The burden now shifts to Plaintiff to identify evidence in the record creating a genuine issue of material fact as to whether he timely exhausted his administrative remedies. He does not respond to Defendant's argument or point to any evidence that his EEOC charge was timely or would support tolling the limitations period. Because he has not responded to this argument, he has failed to meet his summary judgment burden on his ADEA claims. *See Arias v. Wells Fargo Bank, N.A.*, No. 3:18-CV-00418-L, 2019 WL 2514998, at *7 (N.D. Tex. June 18, 2019) ("When a plaintiff fails to defend a claim in response to a motion to dismiss or summary judgment motion, the claim is deemed abandoned.") (citing *Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006)). Defendant's motion for summary judgment on Plaintiff's ADEA claims should be granted on this basis. *See King v. Life Sch.*, 809 F. Supp.2d 572, 580 (N.D. Tex. Aug. 9, 2011) (finding that plaintiff failed to exhaust her age discrimination claims); *Moore v. Cap.*

*One, N.A.*, No. 3:14-CV-3282-D, 2017 WL 2558793, at *13 (N.D. Tex. June 13, 2017) (granting defendant's summary judgment motion on plaintiff's ADEA discrimination claim because she failed to timely exhaust her administrative remedies).[4]

### V.     NEW CLAIMS

Plaintiff's sworn response to Defendant's motion for summary judgment may be liberally construed as alleging additional claims of age discrimination and retaliation. (*See* doc. 42.)

Because Plaintiff is proceeding *pro se*, his pleadings are to be provided "a liberal construction." *Brown*, 675 F.3d at 477. As a general rule, claims and allegations that are not raised in the complaint, but rather raised for the first time in a response to a dispositive motion are not properly before the court. *See Cutrera v. Board of Supervisors*, 429 F.3d 108, 113 (5th Cir. 2005) (explaining that a claim raised for the first time in a response to a motion for summary judgment is not properly before the court). Nevertheless, the Fifth Circuit has held that courts should construe new allegations and theories in responses to dispositive motions as motions to amend. *Debowale v. U.S. Inc.*, 62 F.3d 395 (5th Cir. 1995) (per curiam) (holding that "[t]he district court should have construed [plaintiff's] *Bivens* claim, raised for the first time in his response to the summary judgment motion, as a motion to amend the complaint under [Rule] 15(a) and granted it"). "This is particularly true where ... the litigant is *pro se* and has not yet made any amendments to h[is] complaint." *Riley v. Sch. Bd. Union Par.*, 379 F. App'x 335, 341 (5th Cir. 2010). Plaintiff's allegations and discrimination and retaliation claims in his response to Defendant's motion for summary judgment are construed as a motion to amend, and it is granted.

A district court may grant a motion for summary judgment on grounds not raised by the

---

[4]Because Defendant is entitled to summary judgment on Plaintiff's ADEA claims on untimely exhaustion grounds, it is unnecessary to reach its argument that he cannot establish a prima facie case of age discrimination. (*See* doc. 33 at 11-24.)

9

moving party, provided that the non-moving party is first given notice and a reasonable time to respond. Fed. R. Civ. P. 56(f); *see St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 435 (5th Cir. 2001); *Ross v. University of Texas*, 139 F.3d 521, 527 (5th Cir. 1998). The fourteen-day period for objecting to a magistrate judge's recommendation to grant a motion for summary judgment is sufficient notice under Rule 56(f). *See Dupry v. Gehrig*, No. 08-CV-1036, 2009 WL 2579055, *4 (W.D. La. Aug. 20, 2009) (stating that the previous ten-day objection period satisfied the ten-day notice requirement under Rule 56); *St. Paul Mercury Ins. Co.*, 224 F.3d at 435 (stating that a party should be provided at least ten days' notice before a court grants summary judgment *sua sponte*).

A.   **Discrimination Claims**

Plaintiff alleges that on three separate occasions, he and other co-workers were subjected to verbal abuse that were reported to management, and that in late 2021 or early 2022, he was "overlooked", and less qualified employees were selected to fill in and cover the shifts of a supervisor position. (doc. 42 at 3, 5.) He also alleges that he was to receive CDL and required company training within two years of his start date in the Transportation Department, but he did not obtain his CDL until September 2021, and his training scheduled for March 26, 2022 was cancelled and moved to August 2022. (*Id.* at 6.) He claims that younger, less senior co-workers in the department completed all training requirements before him. (*Id.*) These allegations may be liberally construed as asserting new ADEA discrimination claims.[5]

As discussed, "[a]n individual cannot take legal action in an ADEA case in Texas unless

---

[5]Plaintiff's response also alleges that employment decisions based on an employee's age is illegal under Title VII of the Civil Rights Act of 1964 (doc. 42 at 9), but age is not a trait protected by Title VII, *see* 42 U.S.C. § 2000e–2(a) (providing that it is unlawful for employers to discriminate against individuals with respect to their "compensation, terms, conditions, or privileges of employment, because of [their] race, color, religion, sex, or national origin."). Accordingly, this allegation is liberally construed as arising under the ADEA.

that individual first files an administrative charge within 300 days of the last act of discrimination." *Bettcher v. Brown Sch., Inc.*, 262 F.3d 492, 494 (5th Cir. 2001). The scope of a subsequent judicial complaint is limited to the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge." *See Sanchez v. Standard Brands Inc.*, 431 F.2d 455, 466 (5th Cir. 1970). This requires that the allegations in a subsequent judicial complaint be "like or related to" allegations made in the EEOC charge. *See Vuyanich v. Republic Nat'l Bank of Dallas*, 723 F.2d 1195, 1201 (5th Cir. 1984). When reviewing the EEOC charge, courts should "engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006). "[T]he failure to assert a claim of discrimination in the EEOC charge or for it to be developed in the course of a reasonable EEOC investigation of that charge prohibits the claim from later being brought in a civil suit." *Williams v. Simmons Co.*, 185 F. Supp.2d 665, 681 (N.D. Tex. 2001).

Here, Plaintiff does not allege any facts, or provide evidence, showing that he separately exhausted his administrative remedies on the additional instances of discrimination alleged in his sworn response. His EEOC charge alleges age discrimination based on incidents that occurred between February 5, 2019 and April 2020, and it does not state that the alleged discrimination by Defendant was not a "continuing action." (*See* doc. 34 at 116-17.) There is no evidence that Plaintiff filed a supplemental charge or amended his charge to complain about any of the incidents raised in his sworn response. Because these incidents occurred after Plaintiff filed the EEOC charge on June 4, 2021, and after the EEOC issued a right to sue letter on August 17, 2021, an investigation reasonably expected to grow out of the charge would not encompass age discrimination claims based on the new incidents. Plaintiff has failed to provide evidence that

creates a genuine issue of material fact as to whether he exhausted his administrative remedies as to the new allegations of age discrimination raised in his sworn response, and Defendant is entitled to summary judgment with respect to those claims. *See Finch v. Texas Dep't of Crim. Just.*, 548 F. App'x 281, 282 (5th Cir. 2013) (affirming the district court's holding that "Finch had failed to exhaust his [discrimination] claim since it was not included in his EEOC complaint"); *Garrett v. Judson Indep. Sch. Dist.*, 299 F. App'x 337, 343 (5th Cir. 2008) (upholding the district court's finding that former employee's ADEA claim is time-barred because she did not file a timely administrative charge of age discrimination with the EEOC before filing her lawsuit).

**B.      Retaliation Claim**

Plaintiff's allegation that he tendered his resignation effective August 13, 2022, because he feared he "was going to be fired for filing a claim with the EEOC and the lawsuit," may be liberally construed as asserting an ADEA claim for retaliation. (doc. 42 at 6.)[6]

The ADEA makes it unlawful for employers to retaliate against an individual "for opposing acts of age discrimination, or for charging, testifying, assisting, or participating in any manner in an investigation, proceeding, or litigation under the ADEA." *Holt v. JTM Industries, Inc.*, 89 F.3d 1224, 1225 (5th Cir. 1996) (citing 29 U.S.C. § 623(d)). To establish a prima facie retaliation claim under the ADEA, the plaintiff must show (1) he engaged in activity protected by

---

[6]Because Plaintiff's resignation occurred after the EEOC charge was filed, it is being construed as a retaliation claim. *See Garrison v. Tex. S. Univ.*, No. H-11-2368, 2011 WL 4457374, at *6 (S.D. Tex. Sep. 21, 2011) ("Because the Plaintiff in this case alleges that Defendant's retaliation occurred 'after [she] raised a complaint of discrimination,' she has sufficiently stated that her retaliation claim grew out of her discrimination charge."). Further, Plaintiff may still pursue a retaliation claim even if his resignation was not included in a separate charge to the EEOC. If a retaliation claim grows out of an earlier charge, it is "unnecessary for a plaintiff to exhaust administrative remedies prior to urging [that] retaliation claim" in the Fifth Circuit. *Gupta v. East Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981). Under *Gupta*, retaliation that occurs as a result of filing an EEOC charge can be brought before a court in an ADEA action without filing a new charge. *See Smith v. Dallas Cnty. Hosp. Dist.*, No. 3:13-CV-0792-G (BN), 2014 WL 645248, at *4 (N.D. Tex. Feb. 19, 2014) (citing *id.*).

the ADEA; (2) an adverse employment action occurred; and (3) there was a causal connection between the protected activity and the adverse action. *Wooten v. McDonald Transit Ass'n. Inc.*, 788 F.3d 490, 496-97 (5th Cir. 2015).

"A resignation may constitute an adverse employment action for purposes of a retaliation claim if it qualifies as a constructive discharge." *Pfau v. Mnuchin*, No. 1:18-CV-422-RP, 2019 WL 2124673, at *6 (W.D. Tex. May 15, 2019) (citing *Brown v. Liberty Mut. Grp., Inc.*, 616 F. App'x 654, 657 (5th Cir. 2015)). "Constructive discharge occurs when an employee has quit [his] job under circumstances that are treated as an involuntary termination of employment." *Haley v. All. Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004). The burden is on the employee to prove constructive discharge. *See Boze v. Branstetter*, 912 F.2d 801, 804 (5th Cir. 1990). To establish constructive discharge, an employee must "prove that his working conditions were so difficult or unpleasant that a reasonable person in his shoes would have felt compelled to resign." *Ugalde v. W.A. McKenzie Asphalt Co.*, 990 F.2d 239, 242 (5th Cir. 1993). A court considers the following factors, singly or in combination, to determine whether a reasonable employee would have felt compelled to resign: "(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less than the employee's former status." *Tyler*, 304 F.3d at 394. "Ultimately, to succeed on a constructive discharge claim, the plaintiff must show a greater degree of harassment than is required for a hostile work environment claim." *Hockman v. Westwood Commc'ns, L.L.C.*, 407 F.3d 317, 331 (5th Cir. 2004).

Here, Plaintiff alleges that he resigned, in part, because he was not being promoted and

was frustrated that younger workers were in management positions. (doc. 42 at 6.) He contends that Defendant never promoted employees resembling his "background, accomplishment[s], or work ethics." (*Id.*) He also alleges that he feared he was going to be fired for filing the EEOC charge and this lawsuit. (*Id.*) Even though these allegations are sworn, Plaintiff fails to provide evidence sufficient for a jury to conclude that he was constructively discharged from his position. *See Stagliano v. Cincinnati Ins. Co.*, 633 F. App'x 217, 219 (5th Cir. 2015) ("[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."). Other than his own self-serving statements, there is no evidence for a jury to conclude that a reasonable employee in his position would have felt compelled to resign. *See Ugalde*, 990 F.2d at 242. While Plaintiff claims he was once denied a promotion, the Fifth Circuit has held that "even repeated denials of promotions do not, in and of themselves, demonstrate that a reasonable employee would feel compelled to resign." *Robinson v. Waste Mgmt. of Texas*, 122 F. App'x 756, 759 (5th Cir. 2004) (citing cases). Plaintiff also contends he was afraid of being fired for filing discrimination claims, but "fear of future retaliation," without more, is not sufficient to prove constructive discharge. *See Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998). To constitute constructive discharge, the working environment must be "something more" than that needed for a harassment or hostile work environment claim; it must be "a 'worse case' harassment scenario, harassment ratcheted up to the breaking point.' " *Easterling v. Sch. Bd. of Concordia Parish*, 196 F. App'x 251, 253 (5th Cir. 2006) (quoting *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004)).

Because Plaintiff fails to identify any evidence that would permit a reasonable jury to conclude that he was constructively discharged, he cannot establish that he suffered an adverse employment action, a necessary element of an ADEA claim for retaliation. *See Wooten*, 788 F.3d

at 496-97. Summary judgment should therefore be granted in favor of Defendant on his retaliation claim.[7]

## VI. RECOMMENDATION

Defendant's motion for summary judgment should be **GRANTED**, summary judgment should be *sua sponte* **GRANTED** in favor of Defendant on Plaintiff's remaining claims, and all of the claims against Defendant should be **DISMISSED with prejudice**.

**SO RECOMMENDED** on this 1st day of September, 2023.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[7] In addition to his response to Defendant's motion for summary judgment, Plaintiff also filed a sur-reply without leave of court. (doc. 47.) The Local Civil Rules do not contemplate sur-replies. *See Comstock v. City of Balch Springs*, No. 3:17-CV-344-B, 2017 WL 2791113, at *1 (N.D. Tex. May 18, 2017). "[S]ur-replies are 'highly disfavored' and are permitted only in 'exceptional or extraordinary circumstances.' " *Highmark, Inc. v. Allcare Health Management Systems, Inc.*, No. 4:03-CV-1384-Y (N.D. Tex. Sept. 29, 2015) (citing *Lacher v. West*, 147 F. Supp.2d 538, 539 (N.D. Tex. June 8, 2001)). A sur-reply is appropriate only when the movant attempts to present new evidence at the reply stage and the respondent seeks leave of court to file one. *Brackens v. Dallas Indep. School Dist.*, No. 3:09-CV-642-D, 2010 WL 5464823, at *5 (N.D. Tex. Sept. 20, 2010). Because Plaintiff did not seek leave to file it, his sur-reply is not considered. *See Neely v. Khurana*, No. 3:07-CV-1344-D, 2009 WL 1605649, at *3 n.4 (N.D. Tex. June 5, 2009). Even if considered, however, it would not have changed the findings or ultimate recommendation on the motion for summary judgment.

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

      A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

                                                                                         _____
                                                                                         IRMA CARRILLO RAMIREZ
                                                                                         UNITED STATES MAGISTRATE JUDGE